**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-637-TSC** |
| **v.** | : | |
| | : | |
| **CORY RAY BRANNAN,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Cory Ray Brannan to 30 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

### I.      Introduction

Brannan, a 24-year-old former Corrections Officer in Colorado and Midland, Texas whose duties included, with undeniable irony, quelling prison riots, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in losses.[1]

---

[1] Although the Statement of Offense in this matter, filed on June 10, 2022, (ECF No. 27 at ¶ 11) reflects a sum of more than $1.4 million dollars for repairs, as of April 5, 2022, the most recent estimate of the losses suffered as a result of the siege at the United States Capitol was $2,734,783.15.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Brannan pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)]. As explained herein, a sentence of incarceration is appropriate in this case because Brannan: (1) breached the U.S. Capitol building through a window near the Senate Wing Doors only two minutes after that window was smashed out by other rioters, (2) wore a tactical vest with a Three Percenter patch and carried a pair of scissors and goggles when he breached the U.S. Capitol, (3) was a corrections officer at the time he entered the U.S. Capitol on January 6, 2021; (4) made highly dubious, self-exonerating remarks to FBI agents about his participation in the riot; and (5)) has not offered a sincere expression of genuine remorse for conduct on January 6.

The Court must also consider that Brannan's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution. And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates). Brannan's actions and those of his fellow rioters enabled the breach of the Capitol, threatened the lives of the police officers, legislators and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of this Court). Here, the facts of and circumstances of Brannan's crime support a sentence of 30 days incarceration, 36 months probation, 60 hours community service, and $500 restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 26 (Statement of Offense), at 1-5. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Brannan's conduct and behavior on January 6.

*Defendant Brannan's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Cory Ray Brannan traveled to Washington, D.C. with friends, from their homes in Colorado to attend the "Stop the Steal" rally.

After attending the former President's rally, Brannan marched to the U.S. Capitol along with a mob of rioters. At that time, he was wearing a tactical vest with goggles, scissors, and multiple patches, including a patch bearing the logo of the right-wing militia group, the "Three Percenters."



Brannan was outside the Senate Wing Doors on the west side of the U.S. Capitol when those doors were initially breached at 2:12 p.m.

Approximately two minutes after the entry depicted above, Brannan entered the U.S. Capitol through a broken window near the Senate Wing Doors.



Brannan stayed inside for approximately six minutes, near the Senate Wing Doors, before exiting back through the Senate Wing Doors.



*Brannan's Post-arrest Interview with the FBI*

On September 9, 2021, Brannan was interviewed by Federal Bureau of Investigations (FBI) Agents and made a number of dubious statements.  During the interview Brannan claimed that he went to the U.S. Capitol with two other people but could not recall their last names.  Brannan acknowledged that he went inside the U.S. Capitol building but claimed he could not remember how he got inside the Capitol.  Brannan also claimed he did not know how many days he went up to Washington, D.C., the tactical vest he was wearing belonged to one of the people he rode to Washington, D.C. with, and that he was "carrying it for him." There is no corroborating evidence for this claim.

Brannan knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building.

*The Charges and Plea Agreement*

On September 2, 2021, the United States charged Brannan by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On September 9, 2021, law enforcement officers arrested him in Midland, Texas.  On October 22, 2021, the United States charged Brannan by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On June 10, 2022, pursuant to a plea agreement, Brannan pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Brannan agreed to pay $500 in restitution to the Department of the Treasury.

## III.   Statutory Penalties

BRANNAN now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Brannan faces up

to six months of imprisonment and a fine of up to $5,000. Brannan must also pay restitution under

the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545

F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing

Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.      Sentencing Factors Under 18 U.S.C. § 3553(a)**

    In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies

the factors a court must consider in formulating the sentence. Some of those factors include: the

nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the

defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote

respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence,

§ 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as

described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days incarceration,

60 hours community service, and $500 restitution.

**A.  The Nature and Circumstances of the Offense**

    The attack on the U.S. Capitol, on January 6, 2021 was a crime unparalleled in American

history and defies comparison to other violent riots. It represented a grave threat to our democratic

norms and practices. Indeed, it was the one of the only times in our history when the building was

literally occupied by hostile participants.

    While each defendant must be sentenced based on their own conduct, this Court should

take into account that each person who entered the Capitol on January 6 without authorization did

so under extreme circumstances. As they entered the Capitol, they very likely crossed through

numerous barriers and barricades and heard the violent outcries of a mob. Depending on the timing

and location of their approach, they also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while assessing Brannan's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated  sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had Brannan personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Brannan is therefore not a mitigating factor in misdemeanor cases.

Brannan came to Washington, D.C. with friends, carrying goggles, a large pair of scissors, and a tactical vest bearing a patch with the logo of the Three Percenters, and wore that patch when he entered the Capitol through a recently smashed out window.[2]   When he entered the Capitol, Brannan was wearing the goggles and carrying the  scissors in the tactical vest.  Brannan was near

---

[2] "Three Percenters are part of the militia movement, which supports the idea of a small number of dedicated 'patriots' protecting Americans from government tyranny, just as the patriots of the American Revolution protected early Americans from British tyranny.". www.adl.org/resources/backgrounders/three-percenters (visited September 14, 2022.

the front of the crowd on the west side of the Capitol building because he entered the Capitol through a broken window only two minutes after the initial breach.

Additionally, in Brannan's interview he suspiciously claimed to have forgotten large swaths of information regarding his criminal conduct on January 6, while simultaneously remembering mitigating conduct.  Brannan repeatedly told  the FBI Agents who interviewed him that he did not think there would be violence in Washington, D.C., that he came to Washington, D.C. to attend a rally only, that one of the people he was traveling with brought the tactical vest, and that he never intended to enter the U.S. Capitol on that day.  While remembering these facts, Brannan forgets how he entered the U.S. Capitol (through a window), the patch he was wearing on his tactical vest (Three Percenter), and how long he stayed in Washington, D.C. (two days).

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of BRANNAN

As set forth in the PSR, Cory Ray Brannan does not have any criminal history with the exception of two speeding tickets. ECF 29 ¶ 29. Brannan reported to the PSR writer that he graduated high school in 2017 and went to work for the Buena Vista, Colorado Department of Corrections. ECF 29 ¶¶ 48, 55.  Brannan then moved back to his home state of Texas in 2020 and began working for the Midland County Sheriff's Office. ECF 29 ¶ 54. It is no small irony that, in that job, he worked "on the special response unit (SRU)—he primarily worked in prisoner transportation, *riots*, and special tactics." *Id.* (emphasis added).

While Brannan's prior work in law enforcement is laudable, it renders his conduct on January 6 all the more troubling. As a former corrections officer whose work included dealing with prison riots, Brannan should have known better than anyone the risks to law enforcement

officers confronted with a riot, particularly one on the scale of the January 6 riot at the Capitol in which he participated. That knowledge makes his participation particularly egregious and a significant aggravating factor in this case.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.   The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [[Defendant Last Name]] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

11

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Brannan based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot. Although those like Brannan convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. A probationary sentence should not be the default.[5]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing). Accord, *United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

Brannan has pleaded guilty to Count Four of the Information, charging him with parading, picketing, or demonstrating inside a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).]

---

[4]  Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[5]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch

of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and large number of victims. Thus, even though many of defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains exactly the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who entered the Capitol shortly after the initial breach. A defendant who entered the Capitol shortly after a breach had to have been near the front of the crowd, and is part of making the initial breach occur that allowed hundreds of rioters behind him enter.

In *United States v. Register*, 21-cr-349 (TJK) the defendant pled guilty to violating 40 U.S.C. § 5104(e)(2)(G) in connection with penetrating the Capitol building. Register approached and breached the Capitol building five minutes after the first wave of rioters; he spent thirty minutes inside the building. Register went to more areas of the Capitol building than Brannan did and reset his phone afterwards, but Brannan entered the Capitol closer in time to the breach than Register, and Brannan entered through a window. In Register, the Government requested five months imprisonment, and Judge Kelly sentenced him to 75 days' incarceration.

In *United States v. Peretta* and *Vukich*, 21-CR-539 (TSC) both defendants pled guilty to violating 40 U.S.C. § 5104(e)(2)(G) in connection with penetrating the Capitol building. Like Brannan, both Peretta and Vukich breached the Capitol building in close proximity to the initial breach. Peretta and Vukich spent longer inside the Capitol than Brannan, and had social media posts that Brannan did not have. However, Brannan entered through a window while wearing a

tactical vest.  In *Peretta* and *Vukich* the Government requested thirty days incarceration, and this Court sentenced them to thirty days incarceration.

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently— differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     This Court's Authority to Impose a Sentence of Up to 14 Days of Imprisonment and Probation.

As nine judges of this District have now concluded, this Court has the authority under 18 § 3561(a)(3) to impose a "split sentence," *i.e.*, a sentence requiring both a term of imprisonment and a term of probation, on a defendant who has been convicted of a "petty offense." *See, e.g.*, *United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case), *appeal pending*, D.C. Circuit No. 22-3018; *see, e.g.*, *United States v. Little*, 21cr315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case); *United States v. Sarko*, No. 21cr591 (CKK), 2022 WL 1288435, at *1 (D.D.C. Apr. 29, 2022) (explaining why a split

sentence is permissible in a petty offense case); *United States v. Caplinger*, No. 21cr342 (PLF),

2022 WL 2045373, at *1 (D.D.C. June 7, 2022) ("the Court concludes that a split sentence is

permissible for a petty offense and therefore is an option for the Court in Mr. Caplinger's case.");

*United States v. Smith*, 21cr290 (RBW), ECF 43 (D.D.C. Mar. 15, 2022) (imposing split sentence);

*United States v. Meteer*, 21cr630 (CJN), ECF 37 (D.D.C. April 22, 2022) (same); *United States v.*

*Entrekin*, 21cr686 (FYP), ECF 34 (D.D.C. May 6, 2022) (same); *United States v. Revlett*, 21cr281

(JEB), ECF 46 (D.D.C. July 7, 2022) (same); *United States v. Getsinger*, 21cr607 (EGS), ECF 60

(D.D.C. July 12, 2022) (same); *United States v. Ticas*, 21cr601 (JDB), ECF 40 (D.D.C. July 15,

2022) (same); *United States v. Caplinger*, 21cr342 (PLF), ECF 74 (D.D.C. August 1, 2022) (same);

*United States v. Jeremiah Carollo*, 22cr44 (APM) (D.D.C. September 13, 2022) (judgment not yet

filed).[6] This Court should follow suit and sentence Brannan to thirty day's incarceration and thirty-

six month's probation.

      But if this Court nonetheless elects to sentence Brannon to no more than fourteen days'

incarceration, it need not decide that question in this case because there is no dispute that such a

defendant can be required to "remain in the custody of the Bureau of Prisons during nights,

weekends, or other intervals of time, totaling no more than the lesser of one year or the term of

imprisonment authorized for the offense, during the first year of the term of probation or supervised

release." 18 U.S.C. § 3563(b)(10).   Congress enacted this provision to give sentencing courts

"flexibility" to impose incarceration imprisonment as a condition of probation in one of two ways.

S. Rep. No. 225, 1983 WL 25404, at *98.   First, a court can direct that a defendant be confined in

---

[6] In *United States v. Lindsey*, 21-cr-162 (BAH), ECF 102, the defendant pleaded guilty to three counts: 18 U.S.C. § 1752(a)(1); 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G). Chief Judge Howell sentenced Lindsey to five months incarceration on each of the § 5104 counts, to be served concurrently, and 36 months' probation on the § 1752(a)(1) count.

"split intervals" over weekends or at night. *Id.* Second, a sentencing court can impose "a brief period of confinement" such as "for a week or two." *Id.*

Although the statute does not define an "interval of time," case law suggests that it should amount to a "brief period" of no more than a "week or two" at a time. *See United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, *e.g.*, for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18, 2011) (concluding that two 45-day periods of continuous incarceration as a condition of probation was inconsistent with Section 3563(b)(10)); *see also United States v. Anderson*, 787 F. Supp. 537, 538 (D. Md. 1992) (continuous 60-day incarceration not appropriate as a condition of probation). A 14-day term of imprisonment is therefore permissible under Section 3563(b)(10). S*ee United States v. Stenz*, 21-cr-456 (BAH) ECF 38 (D.D.C. Feb. 17, 2022) (imposing imprisonment under Section 3563(b)(10); *United States v. Schornak*, 21-cr-278 (BAH) ECF 71 (D.D.C. Feb. 18. 2022) (same); *United States v. Herendeen*, 21-cr-278 (BAH) ECF 87 (D.D.C. Apr. 1, 2022) (same); *United States v. McCreary*, 21-cr-125 (BAH) ECF 46 (D.D.C. Apr. 1, 2022) (same); *United States v. Reed*, 21-cr-204 (BAH) ECF 178 (D.D.C. Apr. 14, 2022) (same); *United States v. Watrous*, 21-cr-627 (BAH) ECF 40 (D.D.C. Apr. 21, 2022) (same); *United States v. Vuksanaj*, 21-cr-620 (BAH) ECF D.D.C. Apr. 29, 2022) (43 (same); *United States v. Heinl*, 21-cr-370 (EGS) ECF 43 (D.D.C. June 8, 2022) ECF 43 (same); *United States v. Cameron*, 22-cr-00017 (TFH) ECF 36 (D.D.C. Aug. 17, 2022) (same).

No court appears to have decided whether a term of continuous imprisonment greater than two weeks but less than 30 days is consistent with Section 3563(b)(10), and the government does

not advocate such a sentence here. Practical concerns with multiple short terms of intermittent confinement (i.e., nights and weekends in jail), which would require repeated entries and departures from a detention facility during the COVID-19 pandemic, thereby increasing the risk of spreading contagion in the facility, may militate against imposing this type of "intermittent" confinement. For that reason, any 14-day term of imprisonment imposed as a condition of probation under Section 3563(b)(10) should be ordered to be served without interruption.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days incarceration, 36 months' probation, 60 days community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *April Ayers-Perez*
April Ayers-Perez
Assistant United States Attorney
Detailee
11204 McPherson Road, Suite 100A
Laredo, Texas 78045
TX Bar No. 24090975
956-754-0946
April.Ayers-Perez@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

On this 16th day of September, 2022 a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div style="margin-left: 40%;">

<u>s/ <i>April Ayers-Perez</i></u>
April Ayers-Perez
Assistant United States Attorney
Detailee
11204 McPherson Road, Suite 100A
Laredo, Texas 78045
TX Bar No. 24090975
956-754-0946
April.Ayers-Perez@usdoj.gov

</div>